# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN JONES,<br><br>        Plaintiff,<br><br>    v.<br><br>M. PALOMBO,<br><br>        Defendant.<br>_____/ | CASE NO. 1:07-cv-01788-OWW-GSA PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT BE DENIED AS UNTIMELY FILED, AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(Docs. 37 and 41)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations Addressing Parties' Motions for Summary Judgment**

### I.    Background

        Plaintiff Kevin Jones, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action filed pursuant to 42 U.S.C. § 1983 on December 10, 2007.  This action for money damages is proceeding on Plaintiff's amended complaint, filed January 28, 2008, against Defendant Palombo for use of excessive physical force, in violation of the Eighth Amendment.  The event at issue in this action occurred at Kern Valley State Prison, in Delano, California on July 18, 2006.

        Defendant filed a motion for summary judgment on June 29, 2009.  After obtaining an extension of time from the Court to file an opposition, Plaintiff filed what he entitled a motion for summary judgment, which is addressed below.[1]  The motions have been deemed submitted pursuant

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on June 23, 2008.  <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).  (Doc. 19.)

to Local Rule 230(l), and the Court now issues its findings and recommendations for consideration. (Docs. 37, 41.)

## II. Plaintiff's Cross-Motion for Summary Judgment

The deadline for filing pretrial dispositive motions was June 29, 2009, and Defendant timely filed a motion for summary judgment on that date. On July 23, 2009, Plaintiff filed a motion seeking an extension of time to file his response to Defendant's motion, which was granted, and on July 30, 2009, Plaintiff filed what he entitled a motion for summary judgment.

Despite Plaintiff's language to the contrary, it is not clear that Plaintiff is seeking summary judgment given his representation in his motion that there are triable issues of fact. Regardless, the deadline for filing pretrial dispositive motions was June 29, 2009. Plaintiff's cross-motion was not timely, and Plaintiff did not seek an extension of the dispositive motion deadline. Although Plaintiff was granted an extension of time, it was to file an opposition to Defendant's motion and did not have the effect of extending the deadline by which to file dispositive motions.

Therefore, Plaintiff's cross-motion for summary judgment is untimely, and the Court recommends that it be denied on that ground. The Court will, however, consider the filing as an opposition to Defendant's motion.

## III. Defendant's Motion for Summary Judgment

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

///

which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Id.

### B. Undisputed Background Facts

On July 18, 2006, Plaintiff was housed in the Administrative Segregation Unit at Kern Valley State Prison in Delano, California. (Doc. 37-3, Def. Undisputed Facts 2 & 4; Doc. 41, Opp., Jones Dec. at court record p. 18.) Officer Perez, a female officer, was facilitating showers in the unit and observed Plaintiff standing on his toilet masturbating. (Def. U.F. 5 & 6; Jones Dec. c.r. p. 19.) Plaintiff was escorted to Sergeant Harden's office, verbally counseled, and informed he was receiving a Rules Violation Report (RVR) based on the incident. (Def. U.F. 14; Opp. & Jones Dec. c.r. pp. 5 & 19.) Plaintiff became agitated and in expressing his displeasure in receiving an RVR, raised his voice to Sgt. Harden. (Def. U.F. 15; Opp. c.r. pp. 5 & 6.) Plaintiff was returned to his cell and shortly thereafter, Plaintiff began kicking his cell door repeatedly with great force out of anger over receiving the RVR. (Def. U.F. 16 & 17; Opp. & Jones Dec. c.r. p. 6 & 19.)

Officers Terrazas and Palombo responded to Plaintiff's cell, where they observed him kicking his cell door. (Def. U.F. 19; Opp. & Jones Dec. c.r. p. 6 & 19.) Defendant Palombo ordered Plaintiff to stop kicking the cell door. (Def. U.F. 21; Jones Dec. c.r. p. 19.) Plaintiff stopped kicking the door, walked to the back of the cell, and sat on his desk after Defendant told

him that kicking the door would not resolve his dissatisfaction with receiving an RVR. (Def. U.F. 25; Jones Dec. c.r. p. 19 & 20.)

Officer Terrazas and Defendant Palombo exited the area, believing the issue was resolved. (Def. U.F. 26; Jones Dec. c.r. p. 20.) Plaintiff waited until they began walking down the stairs and then began kicking the cell door again. (Def. U.F. 27; Jones Dec. c.r. p. 20.) The officers returned and Defendant Palombo told Plaintiff that if he did not stop kicking the door, Defendant was going to spray him with pepper spray. (Def. U.F. 33; Jones Dec. c.r. p. 20.) Defendant issued multiple orders to Plaintiff to quit kicking the cell door or he would be sprayed, but Plaintiff failed to comply. (Id.) Defendant then opened the food port door and deployed his MK-9 O.C. pepper spray, spraying toward Plaintiff's facial area. (Def. U.F. 35; Jones Dec. c.r. p. 20.) Plaintiff grabbed his state issued mattress and deflected some of the spray from his face while Defendant emptied his canister. (Def. U.F. 38 & 39; Jones Dec. c.r. p. 20.)

Thereafter, Plaintiff submitted to being handcuffed and was escorted to a nurse for examination, after which he was decontaminated. (Def. U.F. 42; Jones Dec. c.r. p. 20.) The injuries sustained by Plaintiff during the incident were limited to a burning sensation from the pepper spray, (Def. U.F. 51; Opp. & Jones Dec. c.r. pp. 7 & 21), although Plaintiff also represents the pepper spray subsequently made his sinus and allergy issues worse, (Opp. & Jones Dec. c.r. pp. 7 & 22).[2]

### C.     Legal Standard for Excessive Force Claims

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishments forbidden by the Eighth Amendment," Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995 (1992) (internal quotations and citations omitted), and "[w]hat is necessary to establish an unnecessary and wanton infliction of pain . . . varies according to the nature of the alleged constitutional violation," Hudson, 503 U.S. at 5. Correctional officers must balance the need to maintain or restore discipline through force against the risk of injury to inmates, which may require them to act quickly and decisively, and which implicates the principle that prison administrators should be accorded wide deference in the adoption and execution of policies and practices that in

---

[2] The Court will assume the truth of that representation in resolving Defendant's motion.

4

1  their judgment are needed to preserve internal order and discipline and to maintain institutional
2  security. Id. at 6 (quotations and citations omitted).

3  Therefore, for excessive force claims, "the core judicial inquiry is . . . whether force was
4  applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to
5  cause harm." Id. at 6-7. "In determining whether the use of force was wanton and unnecessary, it
6  may also be proper to evaluate the need for application of force, the relationship between that need
7  and the amount of force used, the threat reasonably perceived by the responsible officials, and any
8  efforts made to temper the severity of a forceful response." Id. (internal quotation marks and
9  citations omitted). While "[t]he absence of serious injury is . . . relevant to the Eighth Amendment
10 inquiry, [it] does not end it." Id.

**D.    Discussion**

Plaintiff was angry over receiving an RVR for masturbation and expressed that anger by forcefully kicking his cell door. After Officers Terrazas and Palombo came to Plaintiff's cell door the first time and succeeded in getting Plaintiff to stop kicking the door, Plaintiff waited for them to leave and then began forcefully kicking the door again. When they returned to his cell, Plaintiff refused to comply with repeated orders to stop kicking the door, even though he admits he was warned that pepper spray would be used against him if he did not comply with the orders.

Defendants submit evidence, uncontroverted by Plaintiff, that Officer Ojeda, who was in the control booth, had an unobstructed view of Plaintiff's cell and observed Plaintiff kicking his cell door with as much force as possible. (Def. U.F. 28 & 29.) A red light on the control panel indicates that a cell door is open or insecure while a green light indicates that a cell door is closed or secure. (Def. U.F. 30.) After Plaintiff began kicking his cell door, Officer Ojeda saw the control panel light for Plaintiff's cell begin flickering and it continued to flicker as Plaintiff continued to kick the door. (Id.) As a result, Officer Ojeda informed Defendant Palombo that the door to Plaintiff's cell was no longer secure, which is of particular concern in Administrative Segregation because inmates are not allowed out of their cells unless restrained and escorted, usually by two officers. (Def. U.F. 31 & 32.)

///

5

After observing Plaintiff's cell door move back and forth and receiving Officer Ojeda's warning that the cell was no longer secure, and in the face of Plaintiff's refusal to comply with repeated orders to stop kicking the door despite being threatened with the use of pepper spray, Defendant deployed his pepper spray into the cell through the food port door in order to gain Plaintiff's compliance with orders. (Def. U.F. 34 & 35; Doc. 37-6, Palombo Dec., ¶22.) Plaintiff deflected the some of the spray by using his mattress as a shield, but did feel the effects of the spray, which achieved the desired effect of gaining Plaintiff's compliance with orders. (Def. U.F. 39; Palombo Dec., ¶22.)

Plaintiff argues that the use of pepper spray against him violated his constitutional rights despite his acknowledgment that he was forcefully kicking his cell door out of anger and refusing to obey orders to cease, because Defendant used pepper spray not only to gain his compliance but to "immobilize him" for failing to comply with verbal orders; that Defendant's conduct was unprofessional and unreasonable; that Plaintiff did not present a threat to himself or others; that Defendant had other options to gain compliance, such as issuance of another RVR; and that Plaintiff was harmed by the use of the pepper spray. (Opp. & Jones Dec., c.r. pp. 4, 5, 8, 12, 13, 14, 21, & 22.)

Plaintiff's arguments are unavailing. Plaintiff's belief that Defendant could have or should have used another method to gain control over the situation is unpersuasive in light of the undisputed facts showing that Plaintiff was repeatedly and forcefully kicking his cell door to the point of compromising the security of the cell, and that Plaintiff failed to comply with repeated orders to cease kicking the cell door despite being warned that pepper spray would be deployed. The Constitution protects Plaintiff from use of force that is sadistic and malicious. It does not mandate that prison officials, in the midst of trying to regain control of a situation that is threatening the safety and security of the institution, evaluate all potential methods and employ one that, in the inmate's opinion, is least forceful.

To the contrary, judgments such as that made by Defendant Palombo in this instance and under these circumstances are entitled to wide deference. Hudson at 6. Having clearly and admittedly created a situation that required some sort of response by correctional officers to regain

6

order, the Eighth Amendment does not entitle Plaintiff to second guess the method employed to restrain him. The issue is whether the force was applied in a good-faith effort to restore discipline or not, and the facts clearly demonstrate that it was so employed.

Further, the fact that Plaintiff felt pain from the pepper spray and experienced breathing issues as a result of the application of pepper spray does not suffice to raise a triable issue of fact with respect to whether the force used was excessive. If pepper spray was benign and caused no pain, it would be ineffective and would serve no usefulness as a tool by law enforcement to maintain or restore discipline. It is a given that pain will result from the application of pepper spray and therefore, suffering from a painful burning sensation is not evidence that the force used was excessive, as Plaintiff argues.

There is no evidence in the record, other than Plaintiff's unsupported opinion, that the force was used against him was malicious and sadistic. Rather, the facts support Defendant's position that the use of pepper spray was limited to a good faith effort to restore discipline in light of Plaintiff's conduct and failure to obey orders to stop kicking the cell door. The Court finds that Defendant is entitled to summary judgment on Plaintiff's excessive force claim.

## IV. Conclusion and Recommendation

The Court finds that based on the undisputed facts in this case, Defendant is entitled to judgment as a matter of law on Plaintiff's claim that Defendant violated his rights under the Eighth Amendment by using excessive force against him. In light of the Court's finding that Defendant is entitled to judgment on the merits, the Court does not reach Defendant's argument that he is entitled to qualified immunity.

Accordingly, the Court HEREBY RECOMMENDS that Defendant's motion for summary judgment, filed June 29, 2009, be GRANTED, and judgment be entered for Defendant and against Plaintiff.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

**Dated:**   **January 21, 2010**            **/s/ Gary S. Austin**
                                                                                   UNITED STATES MAGISTRATE JUDGE